## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MITCHELL STERN, | ) | CIVIL ACTION NO. |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| MARA INVESTMENT GROUP LLC, | ) | |
| MARA INVESTMENT MANAGEMENT LP and | ) | |
| JUSTIN MURPHY | ) | |
| | ) | |
| Defendants. | ) | OCTOBER 14, 2021 |

## COMPLAINT

### Parties

1.     The Plaintiff, Mitchell Stern ("Plaintiff" or "Stern"), is an individual residing at

395 Westchester Avenue, # 6C, Port Chester, NY 10573.

2.     Upon information and belief, the Defendant Mara Investment Group LLC

("MIG") is a limited liability company organized under the laws of the State of Delaware.

3.     Upon information and belief, the Defendant Mara Investment Management LP

("MIM") is a limited partnership organized under the laws of the State of Delaware.

4.     Upon information and belief, both MIG and MIM have a principal place of

business at 125 Greenwich Avenue, 3rd Floor, Greenwich, Connecticut 06830.

5.     Upon information and belief, the Defendant Justin Murphy ("Murphy") is an

individual residing at 1800 East Putnam Avenue, Old Greenwich, Connecticut 06870.  At all

relevant times, Murphy was the principal owner and managing member of MIM and MIG.

## Jurisdiction

6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and § 27 of the Securities and Exchange Act of 1934 (15 U.S.C. § 78aa).  The Plaintiff's claims arise under Section 10(b) and 20(a) of the Securities Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated by the United States Securities and Exchange Commission (17 C.F.R. 240.10b-5).

7.      This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) as the state law claims are related to the claims within this Court's original jurisdiction such that they form part of the same case or controversy under Article III of the United States Constitution.

8.      Venue is proper in this district pursuant to § 27 of the Securities and Exchange Act and 28 U.S.C. § 1391(b) because many of the acts giving rise to the violations of which the Plaintiff complains occurred in this district.

9.      At all relevant times, in connection with the alleged acts, the Defendants directly or indirectly used the means or instrumentalities of interstate commerce including, but not limited to, the mail and interstate wire and telephone communications.

## Facts Applicable to All Counts

10.      In March 2016, the Plaintiff learned about an investment opportunity with MIM and MIG.

11.      Around that time, the Plaintiff met with Jeffrey Tomasulo ("Tomasulo"), the then principal and managing member of MIG, to discuss the investment opportunity and to learn more about MIM and MIG.

12.     Through those discussions with Tomasulo, both individually and on behalf of MIM and MIG, the Plaintiff was told how the investment opportunity worked. The Plaintiff was also told that the investment fund had a good track record of positive performance and that when other funds were not performing well, this particular fund was performing well.

13.     This information was important to the Plaintiff in that he was looking for a relatively conservative investment.

14.     It was the Plaintiff's understanding that he was being offered, by the Defendants, the opportunity to purchase a limited partnership interest in MIM, an investment fund managed by MIG, its sole general partner.  The Plaintiff understood, based on his discussions with Murphy, that his capital contributions to MIM, plus share of the profits and losses of the investment fund, would be reflected in his capital account and on his monthly statements.

15.     Based on representations made by Defendants, including in the offering documents, the Plaintiff was led to believe that he would be able to withdraw funds from his capital account in accordance with the parties' agreements.

16.     According to representations made by Tomasulo, in 2016 MIG invested in relatively conservative stocks, such as oil, gas, and healthcare stocks.

17.     These representations were relevant to the Plaintiff's decision in investing with the Defendants since the Plaintiff was looking for a stable investment where he could withdraw his funds relatively easily.

18.     The Defendants solicited and effected the sale of the limited partnership interests pursuant to a Confidential Private Offering Memorandum, dated January 1, 2016 (the "Memorandum").  In that Memorandum, MIG identified itself as the sole general partner of MIM, the advisor of MIM and the entity responsible for investing all of the assets of MIM.

3

19.     According to the Memorandum, MIM's investment objective was to achieve capital appreciation with limited volatility and low correlation to the overall market.

20.     The Memorandum also stated, *inter alia*, that a limited partner may withdraw capital from his capital account in the partnership quarterly, as of the last day of any quarter, upon not less than 30 days' prior written notice to the General Partner.

21.     The limited partnership interests were sold through a Limited Partnership Agreement ("MIM Agreement") for MIM.

22.     According to the MIM Agreement, the object and purpose of the limited partnership was, *inter alia*, to "invest and trade….in shares of capital stock, subscriptions, investment company shares, exchange traded funds, partnership interests, real estate investment trusts, royalty trusts and other trusts or associations."

23.     According to the terms of the MIM Agreement, the Plaintiff had the right to withdraw capital from his capital account quarterly, as of the last day of any quarter, upon no less than 30 days' prior written notice to MIG.

24.     Further, according to Section 6.4 of the MIM Agreement, payments made to a limited partner withdrawing greater than 95% of their capital account shall be made in the following manner: (i) 95% of the amount of his capital account withdrawn (less any applicable withdrawal fee), within 30 days of the effective date of the withdrawal; and (ii) the balance of the amount of his capital account withdrawn, within 30 days following delivery of the audited financial statements of the limited partnership for the fiscal year in which such withdrawal date occurs.

25.     Based upon the representations made to him by Tomasulo, Murphy, MIM and MIG, and the statements in the Memorandum and the MIM Agreement regarding the investment

in conservative stocks and ability to withdraw his investment, the Plaintiff decided to become a limited partner in MIM.

26.    On March 29, 2016, the Plaintiff signed the MIM Agreement.

27.    At that time, the Plaintiff made an initial capital contribution of $200,000.00 in MIM.  In return for that capital contribution, Plaintiff received a limited partnership interest in MIM.

28.    As further alleged below, MIG and Murphy acted as control persons within the meaning of § 20(a) of the Securities Exchange Act.

29.    After the Plaintiff's initial capital contribution of $200,000.00, by December 31, 2016, the Plaintiff's capital account statement evidenced approximately a $32,000.00 gain.

30.    The Plaintiff's capital account remained stagnant for the first half of 2017, and then he was told by Defendants that profits had begun to improve.

31.    At some point in the Spring of 2017, Tomasulo's affiliation with the Defendants ended.

32.    At some point during the business relationship, Murphy informed the Plaintiff that all of the employees of MIM and MIG also held ownership interests in the companies.

33.    In 2018 the Plaintiff was approached by a principal of the Defendants and asked to provide another capital contribution of $100,000.00 in MIM.

34.    In order to induce the Plaintiff to invest these additional funds, the Plaintiff was told by the principal of the Defendants that the fund was profitable and that he would make more money if he made an additional investment.  The principal acted at Defendants' direction and with Defendants' knowledge.

35.     In reality, upon information and belief, at the time that the Defendants solicited Plaintiff's additional investments, the fund was losing money and was unable to honor capital account withdrawal requests.

36.     At some point during the business relationship, Tomasulo, on behalf of Defendants, told the Plaintiff that other investors had invested over one million dollars in MIM.

37.     The Plaintiff was also told by Tomasulo that he was not required to meet the minimum investment requirement because his friend was employed with MIG and MIM, and as such, they were willing to give him a break on the management fees.

38.     The statements made on behalf of MIM were false and misleading because they failed to reveal that the MIM as losing money and Plaintiff would not be allowed to withdraw money from his capital account.  The Defendants intentionally omitted this information in order to deceive, manipulate, and defraud Plaintiff and induce him to invest additional funds.

39.     Based on these statements, in Spring 2018 the Plaintiff contributed an additional $100,000.00 to his capital account.  Had Plaintiff known that MIM was losing money and he would not have been able to withdraw the funds from his capital account, he would not have invested an additional $100,000 in MIM.

40.     In 2019 the Plaintiff was told by a principal of MIM, under Defendants' direction and with Defendants' knowledge, that he had to make yet another additional deposit in order to remain a limited partner.

41.     During this time, Murphy implied to the Plaintiff that he needed to have a total investment of approximately $500,000.00 to remain in the partnership.

42.     Plaintiff was also led to believe, based on his monthly statements, that the fund was profitable. Upon information and belief, MIM's investments were actually losing money.

43.     Based on these representations, in May 2019, Plaintiff invested an additional $150,000.00 in order to remain a limited partner, as he was told he had to do, making his total principal investment $450,000.00.

44.     The representation that the Plaintiff had to make an additional deposit in order to remain a limited partner was false.  Defendants knowingly made this false statement in order to induce Plaintiff to invest additional money in MIM.  It was also false and misleading because it failed to reveal that MIM was actually losing money and that Defendants had no intention of allowing the Plaintiff to withdraw his contribution under any circumstances.  Defendants made these statements in order to deceive, manipulate, and defraud Plaintiff and induce him to invest additional funds.

45.     Had the Plaintiff known that his additional contribution was not necessary to remain a limited partner, that MIM was actually losing money, or that he would never be able to withdraw his contribution, he would not have invested additional money in MIM.

46.     The Plaintiff would receive monthly capital account statements (the "Statements") from MIG that depicted, *inter alia*, his beginning capital, any monthly contribution, the profit/loss for the month, and his ending capital.

47.     As time went on, these monthly capital account statements began to be sent later and later, if at all.

48.     In late Fall 2020 the Plaintiff became aware that MIM and MIG were having difficulties and that their performance was questionable.  Based on that, the Plaintiff believed he should withdraw his money.

49.     By that time, the Plaintiff had begun to lose confidence in MIM.

50.     On October 29, 2020, the Plaintiff informed Murphy of his intention to withdraw his funds from MIM.

51.     Murphy indicated that he would give the Plaintiff a call to discuss this.

52.     In or about November 2020, Murphy told the Plaintiff that if he remained a limited partner until December 15, 2020, he would make an additional $25,000.00 gain on his investment.

53.     Based on this representation, on December 4, 2020, the Plaintiff agreed to remain a limited partner through December 15, 2020.

54.     Murphy then informed the Plaintiff that he would have his funds by December 14, 2020.

55.     The Plaintiff did not receive his funds that day.  Instead, Murphy began ignoring calls and text messages from the Plaintiff.

56.     Had the Plaintiff known that he would not receive his money on December 14, 2020, he would not have remained a limited partner through December 15, 2020.

57.     In addition to ignoring his calls and text messages, and failing to return the Plaintiff's capital account, the Defendants failed to provide the Plaintiff with MIM's 2020 financial statements, as required by the Memorandum and the MIM Agreement.

58.     In early January 2021, Murphy informed the Plaintiff that he would have to wait until February 1, 2021 for his funds because, according to Murphy, the Plaintiff did not properly request redemption.

59.     The Plaintiff asked for this position in writing from Murphy but was ignored.

60.     The Plaintiff did not receive his funds on February 1, 2021.

61.     On February 5, 2021, the Plaintiff went to MIM and MIG's office.  During that time, he was informed by Murphy that the delays in receiving his funds were the result of the Covid-19 pandemic.

62.     Murphy told the Plaintiff to return to the office to meet with him on February 10, 2021.  The Plaintiff returned to the office on that day, however Murphy was not there.

63.     The Plaintiff once again went to MIM and MIG's office on February 12, 2021.  At that time, he received his January statement.  Murphy told the Plaintiff that the investments were on an upswing, in an attempt to retain the Plaintiff's investment.

64.     When the Plaintiff informed Murphy that he still wanted to withdraw his money, Murphy asked him to return to the office on February 17, 2021.

65.     The Plaintiff returned to the office on that day.  Murphy was not there.

66.     Murphy continually ignored the Plaintiff's requests to withdraw his funds.

67.     On the rare occasions when Murphy did respond to the Plaintiff's request, he told the Plaintiff that he would receive his money very soon.  The Plaintiff never received his money.

68.     On June 17, 2021, pursuant to Section 6.1 of the MIM Agreement, the Plaintiff sent written notice to MIM, care of MIG, of his intention to withdraw his funds from his capital account as of September 30, 2021.

69.     Despite his written demand, to date, the Plaintiff has not received any of his funds.

70.     In a further effort to retain the Plaintiff's capital account, on October 1, 2021, one day after the Defendants were supposed to return the Plaintiff's investment, Murphy reached out to the Plaintiff in response to a text message that the Plaintiff sent to Murphy reminding him that he was due his funds.

71.     At that time, Murphy informed the Plaintiff that he would be calling him to discuss the return of the capital account.

72.     Murphy never called the Plaintiff, nor returned the capital account as required.

73.     Upon information and belief, Defendants engaged in a deliberate scheme to defraud the Plaintiff and other investors in MIM.  As MIM's investments began to lose money, Defendants falsely represented to Plaintiff that the fund was profitable and induced him to invest additional funds, knowing that he would not be able to redeem his investment.  Indeed, Defendants face multiple lawsuits from other defrauded investors who have unsuccessfully attempted to withdraw their funds from MIM.  Upon information and believe, the Plaintiff and other investors have lost millions of dollars as a result of Defendants' conscious misbehavior.

74.     The Plaintiff has attempted for nearly a year to withdraw his investment in MIM in accordance with his rights under the Memorandum and MIM Agreement and representations from Defendants that he would be able to get his money back.  Defendants have evaded and obstructed the Plaintiff at every turn.

75.     As of the date of the last statement the Plaintiff received in May 2021, the Plaintiff's capital account had a balance of $594,478.08.

76.     Upon information and belief, the amount reflected in the Plaintiff's capital account would have continued to increase during the months of June, July, August, and September 2021.

77.     Because Defendants refuse to return the Plaintiffs' money, Plaintiff's limited partnership interest is worthless.

**Safe Harbor Provision**

78.     The statutory safe harbor providing for forward-looking statements under certain circumstances is inapplicable here.  The statements pled were not identified as "forward-looking" statements when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

**Loss Causation/Economic Loss**

79.     The Defendants engaged in a fraudulent scheme to sell securities.

80.     The Defendants carried out this scheme by making false and misleading statements to the Plaintiff about the securities they sold, in particular, Defendants represented that investors would be able to withdraw funds from their capital accounts.  In fact, Defendants had no intention of allowing investors to withdraw their money.  Defendants also represented that the fund was performing well to induce additional capital contributions, when in fact that was not the case.

81.     As a result of these misrepresentations the Plaintiff has suffered economic loss in the amount of his capital contribution and profits.

82.     Further, as a result of his purchase of unregistered securities from the Defendants, the Plaintiff has suffered economic loss, i.e., damages under the federal securities laws in that the securities have substantially less value than what the Defendants represented.  In fact, because Plaintiff is not allowed to redeem or withdraw his investment, the limited partnership interest is worthless.

83.     Accordingly, the Plaintiff's damages were a direct result of the Defendants' fraudulent scheme and false statements or omissions of material fact.

**First Count**
**(Violation of Section 10(b) of the Securities Exchange Act and Rule 10b-5 as to All Defendants)**

84.     The Plaintiff repeats and realleges the statements contained in paragraphs 1- 83 as if set forth in full herein.

85.     At all relevant times, the Defendants carried out a plan, scheme and course of conduct which was intended to and did deceive the Plaintiff as previously alleged.

86.     Further, at all relevant times, the Defendants carried out a plan, scheme and course of conduct which enabled them to sell unregistered securities to the Plaintiff, and to cause the Plaintiff to purchase such securities at artificially inflated prices, with the belief that the Plaintiff would be able to withdraw his investment per the parties' agreement.  In fact, the securities are worthless because Defendants refuse to allow Plaintiff to withdraw his investment.

87.     Each Defendant individually and jointly took the aforementioned actions.

88.     In furtherance of their misdeeds, as set forth above, the Defendants:

    a.     Employed devices, schemes and artifices to defraud the Plaintiff;

    b.     Made untrue statements of material fact, and/or omitted to state material facts necessary to make the statements not misleading; and

    c.     Engaged in acts, practices and a course of business which operated as a fraud and deceit upon purchasers of securities, including the Plaintiff, in violation of Section 10(b) of the Securities Exchange Act and Rule 10b-5.

89.     The Plaintiff sues Murphy, MIG and MIM either as a primary participant in the wrongful and illegal conduct charged or as a controlling person as alleged in detail below.

90.     The Defendants, individually and in concert, directly or indirectly, by the use, means or instrumentalities of interstate commerce and/or mail, engaged and participated in a

continuous course of conduct to make misrepresentations of material facts and to conceal

adverse material information about the unregistered securities they sold.

91.     The Defendants had actual knowledge of the misrepresentations and omission of

material fact or acted with deliberate disregard for the truth in that they failed to ascertain and to

disclose such facts.

92.     The Defendants' material misrepresentations and/or omissions were done

knowingly or deliberately and with the purpose and effect of concealing the truth about the

unregistered securities from the Plaintiff.

93.     If any Defendant did not have actual knowledge, they were reckless in failing to

obtain such knowledge.

94.     The Plaintiff relied directly or indirectly on the statements and/or omissions made

by the Defendants.

95.     As a result, the Plaintiff suffered damages.

96.     At the time of the misrepresentations, the Plaintiff did not know they were false

and believed them to be true.  Had the Plaintiff known of their falsity, he would not have made

his additional capital contributions or continued to hold the unregistered securities.

97.     As a result of the foregoing, the Defendants have violated Section 10(b) of the

Securities Exchange Act and Rule 10b-5.

98.     As a direct and proximate result of the Defendants' wrongful conduct, the

Plaintiff has suffered damages in an amount to be proven at trial.

**Second Count**
**(Violation of Section 20(a) of the Securities Exchange Act as to Defendants MIG and Justin Murphy)**

99.     The Plaintiff repeats and realleges the statements contained in paragraphs 1-98 as if set forth in full herein.

100.    Murphy acted as a control person for Defendants MIM and MIG as defined by Section 20(a) of the Securities Exchange Act.

101.    Upon information and belief, Murphy had the power to influence and control, and did influence and control, either directly or indirectly, the decision making by MIM and MIG, including the content and dissemination of the various statements which the Plaintiff contends are false and misleading, including the statements regarding withdrawal of the Plaintiff's capital contribution, and the performance of the fund at the time that the additional capital was being solicited.

102.    MIG also acted as a control person of MIM as defined by Section 20(a) of the Securities Exchange Act.

103.    Upon information and belief, MIG had the power to influence and control, and did influence and control, either directly or indirectly, the decision making by MIM, including the content and dissemination of the various statements which the Plaintiff contends are false and misleading.

104.    As set forth above, the Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions.

105.    By virtue of their positions as controlling persons, the Defendants are liable under Section 20(a) of the Securities Exchange Act.

106.    As a direct and proximate result of the Defendants' wrongful conduct, the Plaintiff has suffered damages in an amount to be proven at trial.

### Third Count
### (Breach of Contract as to Defendant Mara Investment Management LP)

107.    The Plaintiff repeats and realleges the statements contained in paragraphs 1-106 as if set forth in full herein.

108.    As set forth in the MIM Agreement, Plaintiff entered into the limited partnership in March 2016.

109.    Pursuant to the terms of the MIM Agreement, the Plaintiff made certain capital contributions totaling $450,000.00, in exchange for his limited partner status.

110.    On June 17, 2021, the Plaintiff sent a written demand to MIM, care of MIG, asking to withdraw his capital account from MIM.

111.    MIM breached its obligations under the MIM Agreement by failing and refusing to return the Plaintiff's capital account.

112.    The Plaintiff fully performed his obligations under the terms of the MIM Agreement.

113.    As a result of MIM's actions, the Plaintiff has suffered damages.

### Fourth Count
### (Breach of Contract as to Defendants Mara Investment Group LLC and Justin Murphy)

114.    The Plaintiff repeats and realleges the statements contained in paragraphs 1-113 as if set forth in full herein.

115.    As set forth in the Memorandum, MIG is the investment advisor and general partner of MIM.

116.    MIG issued monthly statements to the Plaintiff detailing his capital account performance, including but not limited to, the beginning capital, and the profit and loss for the period.

117.    Upon information and belief, MIM has no employees.  All employees work for MIG.

118.    Upon information and belief, Murphy and MIG employees performed all operations of MIM.

119.    Upon information and belief, MIG and Murphy exerted complete domination and control over all aspects of MIM, including management, finances, policies and activities with regard to the Plaintiff's capital account.

120.    MIG and Murphy used their complete domination and control with respect to Plaintiff's capital contribution to commit intentional wrongdoing, including, without limitation, refusing to return the Plaintiff's capital account despite numerous demands both written, verbal and pursuant to the MIM Agreement.

121.    MIG and Murphy used their complete domination and control over MIM to commit fraud, including, without limitation, making false representations of material fact related to MIM and the Plaintiff's capital account.

122.    The complete control and domination of MIM by MIG and Murphy proximately caused losses and damages to the Plaintiff.

123.    MIM and MIG's corporate forms must be disregarded.

124.    Murphy is personally liable for the breach of the MIM Agreement.

125.    As a result of the actions of Murphy and MIG, the Plaintiff has suffered damages.

**Fifth Count**
**(Breach of the Duty of Good Faith and Fair Dealing as to All Defendants)**

126.    The Plaintiff repeats and realleges the statements contained in paragraphs 1-125 as if set forth in full herein.

127.    The covenant of good faith and fair dealing is implied in every Connecticut contract.

128.    As set forth more fully above, MIM and the Plaintiff were parties to the MIM Agreement, under which the Plaintiff had a limited partnership interest in MIM.

129.    MIG and Murphy exerted complete domination and control over MIM.

130.    Defendants breached their duties of good faith and fair dealing by engaging in conduct that denied the Plaintiff his right to recover his capital account as expected and contemplated in the MIM Agreement, including but not limited to:

 a.    Refusing to return the Plaintiff's capital account;

 b.    Ignoring the Plaintiff's demands;

 c.    Fraudulently promising the Plaintiff additional funds if he would not withdraw his capital account; and

 d.    Making material misrepresentations of fact regarding the status of the Plaintiff's capital account and success of MIM.

131.    As a result of these actions, which were egregious, intentional, wanton and malicious, the Plaintiff has suffered damages.

**Sixth Count**
**(Unjust Enrichment as to All Defendants)**

132.    The Plaintiff repeats and realleges the statements contained in paragraphs 1-131 as if set forth in full herein.

133.    Defendants benefitted financially from their continued retention of the Plaintiff's capital account despite his demand for it to be returned.

134.    Defendants have unjustly refused to return the Plaintiff's capital account.

135.    Defendants' failure to return the capital account has been to the Plaintiff's detriment.

## Seventh Count
### (Breach of Fiduciary Duty as to Defendants Mara Investment Group LLC and Justin Murphy)

136.    The Plaintiff repeats and realleges the statements contained in paragraphs 1-135 as if set forth in full herein.

137.    Pursuant to the terms of the Memorandum, MIG as the sole general partner and advisor of MIM, is a fiduciary of the limited partners of MIM, which included the Plaintiff.

138.    Murphy was the principal owner and managing member of MIG and managed the Plaintiff's capital account.

139.    MIG and Murphy had a fiduciary relationship with the Plaintiff, and as a result, had a duty to act in the best interests of the Plaintiff.

140.    MIG and Murphy further had a duty to act in good faith and act honestly with respect to the Plaintiff.

141.    Finally, MIG and Murphy had a duty of undivided loyalty to the Plaintiff in all matters relating to the Plaintiff, including his investment.

142.    MIG and Murphy breached the aforementioned duties by placing their own interests before the Plaintiff's by, *inter alia*, refusing to return the Plaintiff's capital account.

143.    Upon information and belief, MIG and Murphy also breached their fiduciary duties to the Plaintiff by misrepresenting material facts relating to the Plaintiff's capital account, thus placing their interests before the Plaintiff's.

144.    As a result of their actions, the Plaintiff has suffered damages.

**Eighth Count**
**(Fraud as to All Defendants)**

145.    The Plaintiff repeats and realleges the statements contained in paragraphs 1-144 as if set forth in full herein.

146.    At all relevant times, Defendants issued the Statements to the Plaintiff that purported to show the Plaintiff's monthly gains and/or losses on his MIM capital account.

147.    Upon information and belief, the representations contained in the Statements from Defendants were untrue.

148.    The Plaintiff has not received a monthly statement from Defendants since May 2021, despite requesting them.

149.    At all relevant times, Defendants issued IRS K1 Forms to the Plaintiff that purported to show the Plaintiff's annual "partnership income" or losses in MIM (the "K1 Forms").

150.    Upon information and belief, the representations in the K1 Forms issued by MIG, on behalf of MIM were untrue.

151.    Upon information and belief, Defendants knew that the representations in the K1 Forms were untrue, and made those representations to induce the Plaintiff to remain a limited partner in MIM.

152.    For tax years 2016 to 2020, the Plaintiff relied on the statements in the K1 Forms and paid taxes on the income set forth in the K1 Forms.

153.    Defendants, intentionally, or with reckless disregard, mislead the Plaintiff to contribute capital and become a limited partner of MIM.

154.    Defendants further, intentionally or with reckless disregard, failed to return the Plaintiff's capital account, despite numerous demands.

155.    Upon information and belief, at all relevant times, Defendants knew that the representations regarding returning the Plaintiff's capital account were false, and were made in order to induce Plaintiff to refrain from withdrawing his capital account and commencing a lawsuit.

156.    The Plaintiff relied upon Defendants' representations to his detriment.

157.    As a result of the numerous representations of Defendants, the Plaintiff has suffered damages.

## Ninth Count
### (Statutory Theft as to All Defendants)

158.    The Plaintiff repeats and realleges the statements contained in paragraphs 1-157 of the Sixth Count as if set forth in full herein.

159.    At all relevant times, the Plaintiff was the owner of his capital account.

160.    The Defendants' actions, in sending false Statements, sending false K1 Forms, improperly retaining the Plaintiff's capital account and refusing to return the money to the Plaintiff, despite his demand, were done with an intent to appropriate to themselves property which belongs to the Plaintiff, and to deprive the Plaintiff of that money.

161.    The Defendants are liable to the Plaintiff for statutory theft pursuant to *Conn. Gen. Stat.* § 52-564.

**Tenth Count**
**(Conversion as to All Defendants)**

162.    The Plaintiff repeats and realleges the statements contained in paragraphs 1-161 as if set forth in full herein.

163.    At all relevant times, the Plaintiff was the owner of his capital account.

164.    Defendants received and retained the Plaintiff's capital account, despite the Plaintiff's demand for his capital account to be returned to him.

165.    By doing this, Defendants, without authorization, assumed and exercised ownership over property belonging to the Plaintiff.

166.    The Defendants' actions have deprived the Plaintiff of property belonging to him, and as a result, have caused the Plaintiff harm.

**Eleventh Count**
**(Violation of Connecticut Unfair Trade Practices Act as to All Defendants)**

167.    The Plaintiff repeats and realleges the statements contained in paragraphs 1-166 as if set forth in full herein.

168.    Defendants' acts and omissions regarding the Plaintiff's capital account violate the Connecticut Unfair Trade Practices Act ("CUTPA"), *Conn. Gen. Stat.* § 42-110a *et seq.*

169.    At all relevant times, Defendants were engaged in and conducted a trade or business within the State of Connecticut.

170.    Upon information and belief, all of the actions of MIM and MIG were at the direction of Murphy.

171.    The aforementioned actions were undertaken in the course of Defendants' trade or commerce in the State of Connecticut.

172.    Those actions constitute unfair or deceptive acts or practices within the meaning of CUTPA, in that Defendants improperly retained Plaintiff's capital account despite demand to return it.  Such actions violate or offend public policy, were immoral, unethical or unscrupulous, and were substantially injurious to the Plaintiff.

173.    As a direct and proximate result of the Defendants' actions, the Plaintiff has suffered, and will continue to suffer an ascertainable loss, for which Defendants are liable.

174.    Pursuant to *Conn. Gen. Stat.* § 42-110g(c), copies of this complaint will be provided to the Attorney General and the Commissioner of Consumer Protection of the State of Connecticut.

**WHEREFORE**, the Plaintiff requests relief in the form of:

1)     Compensatory damages;

2)     Restitution;

3)     Recission of Plaintiff's limited partnership interest;

4)     An accounting of the books and records of Defendants Mara Investment Group

LLC, Mara Investment Management LP and Justin Murphy;

5)     Treble damages for statutory theft;

6)     Punitive damages for CUTPA violations, conversion and theft;

7)     Attorneys' Fees;

8)     Costs;

9)     Interest; and

10)     Such other further relief as the Court deems appropriate.


THE PLAINTIFF,
MITCHELL STERN

_____
Andrew B. Nevas
Federal Bar No. ct05059
Kristen G. Rossetti
Federal Bar No. ct30503
VERRILL DANA LLP
355 Riverside Avenue
Westport, Connecticut 06880
Telephone:  (203) 222-0885
Facsimile:  (203) 226-8025
Email:  anevas@verrill-law.com
Email:  krossetti@verrill-law.com